The ESTATE OF Frank Bernard CASSARA, by its special administrator, Michael J. CASSARA, Plaintiff,

v.

STATE OF ILLINOIS, Abdul Basit, individually, and as Facility Director; Judith Cast, individually and as an employee of the Defendant, State of Illinois; Paul Jackson, individually and as an employee of the Defendant, State of Illinois; Emma Turner, individually and as an employee of Defendant, State of Illinois; and Other Unknown Employees, individually and as employees of Defendant, State of Illinois, Defendants.

No. 93 C 5076.

United States District Court,
N.D. Illinois, E.D.

Feb. 2, 1994.

Mark A. Sikora, Rittenberg & Buffen, Ltd., Chicago, IL, for Frank Bernard Cassara.

Kathleen Kreisel Flahaven, Daniel P. Fitzgerald, Illinois Atty. General's Office, Chicago, IL, for State of Illinois and Abdul Basit.

Harry B. Bainbridge, Bainbridge Law Offices, Flossmoor, IL, for Judith Cast.

Royal B. Martin, Jr., William Gibbs Sullivan, Martin, Brown, Sullivan & Bowman, Ltd., Chicago, IL, for Paul Jackson, Emma Turner and Other Unknown Employees.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is defendant Abdul Basit's ("Basit")[1] motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). For reasons stated below, the motion is granted.

## FACTS

On February 19, 1993, after requesting the assistance of emergency medical care, Frank Bernard Cassara ("Cassara") was transported to Christ Community Hospital in Oaklawn, Illinois. Cassara complained of stomach problems, anxiety, and depression upon his arrival at the hospital. Cassara also became aggressive, uncooperative, and voiced suicidal tendencies. As a result, the hospital's medical staff restrained Cassara and transported him to the Tinley Park Mental Health Center in Tinley Park, Illinois ("Mental Health Center") on February 20, 1993.

Cassara voluntarily signed himself into the Mental Health Center where he was diagnosed as having major depression recurrent tendencies. Cassara again exhibited an aggressive and uncooperative demeanor at the Mental Health Center. He was assigned a room and placed on "Suicide Precautions Level I" on February 21, 1993. Later that day, however, after Cassara verbally accosted another patient at the center, the staff placed Cassara in a restraint/observation

---

1. The motion was originally filed by both the State of Illinois and Basit. The court's October 29, 1993 order granting the motion in part eliminated the State of Illinois as a party defendant and therefore it is no longer a party to this motion. The other defendants have not joined this motion and therefore the court makes no decision regarding plaintiff's claims against them.

room. In the early morning of February 22, 1993, Cassara was found dead in the restraint/observation room. Utilizing a comb and a pair of socks, Cassara strangled himself.

Michael J. Cassara, as special administrator of Cassara's estate, filed a three-count complaint alleging a violation of 42 U.S.C. § 1983, wrongful death, and a survival action, which is the subject of Basit's motion to dismiss. According to the complaint, the Mental Health Center's staff failed to contact, observe, or supervise Cassara while he was confined in the restraint/observation room and failed to respond to warnings and clear indications that Cassara would commit suicide. The complaint alleges that Basit, the Facility Director at the Mental Health Center, is responsible for the overall supervision and administration of the mental health center. Further, the complaint alleges that Basit failed to implement appropriate procedures and policies for constant and unobstructed observation of suicidal patients and for the removal of devices which could effectuate a suicide. These acts or omissions of Basit allegedly constitute negligence or gross negligence, or constitute deliberate, intentional, or reckless indifference to Cassara's well-being.

## DISCUSSION

■ Initially, the court will clarify a question regarding the suit against Basit in his official capacity. The court's October 29, 1993 order granting in part and denying in part the defendants' motion to dismiss discharged both the State of Illinois and Basit in his official capacity as party defendants. States and state officials sued in their official capacities are unamenable to suit under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989).

■ As for Basit in his individual capacity, the court concludes that count I must be dismissed as well. "Individual liability for damages under § 1983 is predicated upon personal responsibility." *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984). Thus, to recover damages, plaintiff must establish more than that Basit was merely a supervisor of others who committed a constitutional violation. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981); *see Rascon v. Hardiman*, 803 F.2d 269 (7th Cir.1986) (plaintiff must demonstrate supervisory official's direct responsibility for unconstitutional act in order to hold that official liable). To establish personal responsibility, the plaintiff must show some affirmative link between the misconduct complained of and the official who is sued. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985). A supervisor's mere negligence or even gross negligence in failing to detect or prevent subordinates' misconduct does not create liability under § 1983. *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir.1988).

■ Personal knowledge and involvement of the superior are essential for establishing individual liability under § 1983. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir.1990) (personal liability imposed on superior for reckless disregard of deputy's known dangerous propensities); *Jones*, 856 F.2d at 992 (supervisors approved every step in scheme to "railroad" criminal defendant into a conviction and did all in their power to make it work). Knowledge alone is not enough. The superior's conduct must rise to the level of criminal recklessness. *Santiago v. Lane*, 894 F.2d 218 (7th Cir.1990). In other words, the supervisor's conduct must evidence "such wantonness ... as is tantamount to a knowing willingness that [the constitutional violation] occur." *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (citing *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.1985); *Block v. Rutherford*, 468 U.S. 576, 584, 104 S.Ct. 3227, 3231–32, 82 L.Ed.2d 438 (1984)). This requires actual knowledge of easily preventable, impending harm, such that the court can infer a conscious, culpable refusal to prevent the harm from the superior's failure to act. *Id.* (citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985). Liability will thus attach to a supervisory official if a subordinate's conduct occurs at the supervisor's direction or with his or her knowledge *and* consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982).

■ Plaintiff claims that Basit is in charge of enforcing the policies dealing with suicides at the Mental Health Center. He was allegedly responsible for the overall supervision and administration of the facility. But the complaint alleges that Basit's liability arises from his failure to implement proper procedures and policies. The specific allegations in the complaint refer only to defendants Judith Cast, Paul Jackson, and Emma Turner. Basit is not named as being involved personally in the care of Cassara. According to the complaint, Basit's liability is premised on his general failure to create adequate administrative policies for the care of suicidal patients. The complaint is devoid of allegations that Basit knew that a suicidal patient, Cassara, had been admitted to the Mental Health Center or that he was placed in observation. The complaint does not allege that Basit made the decision to place Cassara in the observation room. In fact, the complaint alleges only that Basit knew of, or should have known of, and thus tacitly approved of a policy that fails to protect individuals in the facility from committing suicide, and that Basit failed to adequately train the center's employees in suicide prevention techniques.

An inference may be drawn under some circumstances at the pleadings stage that a supervisory official had some responsibility for claimed misconduct. *See Duncan,* 644 F.2d at 655. In *Duncan* the Seventh Circuit determined that it was proper to infer that a prison hospital administrator had some responsibility for claimed improper medical care, yet the same inference could not be made as to the warden of the prison. *Id.* at 656. The *Duncan* court, however, was concerned with the *pro se* prisoner litigant and relied in part upon the more liberal pleading standards for *pro se* litigants when it justified the inference as to the hospital administrator. *Id.* at 655. Furthermore, the court's conclusion was justified because the alleged

violations were of a nature such that it would be likely that officials at a relatively high administrative level may have acquiesced in the plaintiff's treatment, and the circumstances were not such that the *pro se* prisoner would have personal contact with or knowledge of the person directly responsible for the violations. *Id.* at 656.

In the present case, however, the allegations do not suggest Basit was personally involved in Cassara's treatment, and plaintiff does have access to the identities of those who were personally involved in Cassara's treatment during the time in question. The court finds that it is unreasonable to infer from plaintiff's allegations that Basit made any judgments or decisions regarding the safety or treatment of Cassara.

Because the court concludes that plaintiff failed to plead Basit's personal involvement in the alleged constitutional violation, the court need not reach the merits of Basit's other claims regarding Cassara's alleged due process rights while at the Mental Health Center and the issue of qualified immunity. The motion to dismiss, however, contains a number of remaining issues as to counts II and III.

■ The plaintiff's complaint, liberally construed, alleges a claim for wrongful death under the Illinois Wrongful Death Act, 740 ILCS 180/0.01 *et seq.,* in count II and asserts rights under the Illinois Survival Act, 755 ILCS 5/27–6, in count III.[2] Nonetheless, the proper forum to adjudicate state law claims against state officials is the Illinois Court of Claims. *See* 745 ILCS 5/1; 705 ILCS 505/1; *Healy v. Vaupel,* 133 Ill.2d 295, 140 Ill.Dec. 368, 374–76, 549 N.E.2d 1240, 1246–48 (1990). This rule applies to actions brought against state mental health officials. *Kilcoyne v. Paelmo,* 204 Ill.App.3d 139, 149 Ill.Dec. 767, 769–70, 562 N.E.2d 231, 233–34 (1990). The complaint charging Basit with negligence in

2. The court accepts the factual allegations in the complaint as true, as well as all reasonable inferences drawn from those allegations. *Mid America Title Co. v. Kirk,* 991 F.2d 417, 419 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 310 (1993). Because of the federal courts' "notice pleading" standards, a complaint's mere vagueness or lack of detail is not

sufficient to justify a dismissal, *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985), and a complaint need not specify the correct legal theory nor point to the right statute to survive a motion to dismiss, *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1134–35 (7th Cir.1992) (citing *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992)).

the performance of his duties as a state employee must be dismissed in the absence of a colorable claim that Basit acted in violation of the law or in the excess of his authority. *Healy*, 140 Ill.Dec. at 375–76, 549 N.E.2d at 1247–48.

In sum, plaintiff fails to allege the personal involvement of Basit in the suicide death of Cassara and therefore do not state a claim for which relief may be granted under § 1983. Additionally, the state law claims against Basit must be brought before the Illinois Court of Claims, which serves as the proper forum for actions against the state and the state's officials. Basit is thus dismissed as a party defendant from this litigation.

## CONCLUSION

For the reasons stated above, Basit's motion to dismiss is granted.

IT IS SO ORDERED.