NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200341-U

NO. 4-20-0341

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 7, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KENNETH CURRY, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Logan County |
| ROB JEFFREYS, in His Official Capacity as Acting | ) | No. 20MR56 |
| Director of Corrections; and EMILY RUSKIN, in Her | ) | |
| Official Capacity as Acting Warden of the Lincoln | ) | Honorable |
| Correctional Center, | ) | Thomas W. Funk, |
|     Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's dismissal of plaintiff's *pro se* request for injunctive relief based on plaintiff's failure to exhaust administrative remedies and failure to state a claim.

¶ 2    Plaintiff, Kenneth Curry, is an inmate in the custody of the Illinois Department of Corrections (DOC), housed, at all relevant times, at Lincoln Correctional Center. In April 2020, Curry filed a pleading styled "Complainant's Motion for Emergency Mandatory and/or Preventive Injunction" in the Logan County trial court. Curry's complaint claimed he was subjected to "cruel and unusual punishment by way of deliberate indifference," in violation of the eighth amendment to the United States Constitution. Contending the dormitory design of Lincoln Correctional Center did not support social distancing guidelines and that he was not receiving adequate fresh air or space, Curry's action sought an injunction to compel defendants

Rob Jeffreys and Emily Ruskin to, alternatively, reduce the inmate population by 50%, immediately release him, or allow him access to fresh air while maintaining Lincoln Correctional Center's ventilation system in compliance with Occupational Safety and Health Administration Standards (OSHA).

¶ 3        Defendants, the then-acting Director of Corrections and the acting warden of Lincoln Correctional Center, moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)) on two bases. First, they contended Curry's complaint was barred by the Prison Litigation Reform Act since he had, by his own admission, failed to exhaust his administrative remedies before proceeding with this action. Next, defendants argued Curry failed to state a claim for a violation of the eighth amendment since he failed to allege facts showing the "deliberate indifference" necessary for such a claim.

¶ 4        In July 2020, after a hearing, the trial court granted defendants' motion to dismiss, finding Curry had not exhausted his administrative remedies or alleged facts sufficient to support the equitable relief he sought. Curry appealed the trial court's dismissal of his complaint.

¶ 5                              I. BACKGROUND

¶ 6        Inmate Curry filed his *pro se* motion for injunctive relief in the Logan County trial court in April 2020. He claimed various amendments and articles of both the United States and Illinois Constitutions required the issuance of an "emergency mandatory and/or preventive injunction" because the design of Lincoln Correctional Center "prohibits committed persons, inclusive of the complainant from implementing proper preventive measures" necessary during the ongoing COVID-19 pandemic, such as six-foot social distancing. Curry also contended the ventilation system at the institution was not OSHA compliant and inadequate and that the facility failed to provide "access to windows for the purpose of inhaling fresh air." Curry outlined the

number of inmates contained within each housing wing and the approximate size of the wings, as well as the space available for each bed, contending there was no way to comply with the six-foot social distancing guideline as currently structured. Curry alleged the "deliberate indifference" of defendants who, despite their awareness of the COVID-19 pandemic, had failed to take action to effectuate the federally recommended guidelines for social distancing. Curry further alleged defendants "breached their oaths or affirmations" and were guilty of "Official Misconduct" for having failed to follow federal guidelines for social distancing.

¶ 7 The remedies sought included: (1) reduce the prison population at Lincoln Correctional Center by 50%, "inclusive of the complainant," (2) discharge Curry from his sentence "without impairment" since his continued incarceration had now become "unlawful and unconstitutional" under the eighth amendment, or (3) order Curry to "be allowed fresh air as needed and/or that the ventilation system be maintained in accordance with O.S.H.A. standards."

¶ 8 Defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)), contending Curry's complaint failed to state facts sufficient to support the conclusory allegation of "deliberate indifference" by defendants and could not do so even if given leave to amend. As a result, defendants asked for Curry's complaint to be dismissed with prejudice. In their memorandum supporting the motion, defendants further argued Curry's complaint failed to adequately state a claim and provided no legal authority authorizing the relief sought. Interpreting Curry's complaint as requesting *mandamus* relief, defendants argued the complaint failed to meet the legal requirements for stating a claim for *mandamus*.

¶ 9 Defendants also argued Curry's complaint should be dismissed with prejudice because he failed to exhaust his administrative remedies at the institutional level—a point they

noted Curry himself acknowledged. In his response to the motion, Curry argued the Prison Litigation Reform Act did not apply to him because of a "timely reservation of rights" under the Uniform Commercial Code (UCC) and that the exigencies of the situation entitled him to seek injunctive relief outside the normal course of the administrative process. He also argued defendants had misconstrued his request for injunctive relief as one seeking a writ of *mandamus* and that his factual allegations of both objective and subjective deliberate indifference were sufficient to sustain a claim for a violation of his constitutional rights under the eighth amendment to the United States Constitution.

¶ 10    In July 2020, the trial court heard arguments on the motion and granted it, finding Curry's "administrative remedies have not yet been exhausted and Petitioner failed to specify authority for the remedy requested and for how he fits into the class of persons protected by his claim."

¶ 11    Curry appeals.

¶ 12                                II. ANALYSIS

¶ 13    Curry's complaint was dismissed under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2020). "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). When reviewing the trial court's action, we consider "whether the allegations of the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61, 46 N.E.3d 706. We accept all well-pleaded facts as true. *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶ 21, 135 N.E.3d 891. " 'While the

plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions [citation].' " *Cochran v. Securitas Security Services USA, Inc.*, 2016 IL App (4th) 150791, ¶ 17, 59 N.E.3d 234 (quoting *Marshall*, 222 Ill. 2d at 429-30). A complaint should not be dismissed under section 2-615 unless it is clear no set of facts can be proved that would entitle the plaintiff to recover. *Henderson Square*, 2015 IL 118139, ¶ 61. Our review of such an order is *de novo*. *Roberts*, 2019 IL 123594, ¶ 21. We can affirm the trial court's dismissal of the complaint on any ground supported by the record. *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051, 883 N.E.2d 575, 578 (2008).

¶ 14    As defendants point out, the failure to exhaust administrative remedies "is a straightforward basis for disposing of that party's complaint" by way of a section 2-615 motion to dismiss. *People v. Conley*, 2020 IL App (2d) 180953, ¶ 11, 160 N.E.3d 176. In fact, 17 years earlier, our supreme court had already concluded " '[t]he doctrine of exhaustion of administrative remedies applies to grievances lodged by prisoners, even when the grievances involve an alleged constitutional violation.' " *Beahringer v. Page*, 204 Ill. 2d 363, 376, 789 N.E.2d 1216, 1225 (2003) (quoting 72 C.J.S. *Prisons* § 9(b) (1987)). Explaining the applicable policy considerations, the court said:

> "The exhaustion doctrine applies where a claim is cognizable in the first instance by an administrative agency. *** Among the policy considerations underlying the exhaustion doctrine are that it allows the agency to fully develop and consider the facts of the cause and to utilize its expertise; it protects the agency processes from impairment by avoidable interruptions; it gives the aggrieved

party the opportunity to succeed before the agency; and it allows the agency to correct its own errors, thus conserving valuable judicial resources." *Beahringer*, 204 Ill. 2d at 375.

¶ 15 The court's rationale for applying these policy considerations to prisoner grievances was as follows:

"Courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform. The problems of prisons in this country are complex and intractable, and are not readily susceptible of resolution by judicial decree. Operating a prison is an extremely difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are exclusively within the province of the legislative and executive branches of government. Moreover, since prison administration is a task that has been committed to those branches, separation of powers concerns advise a policy of judicial restraint. [Citations.] Accordingly, courts afford wide-ranging deference to the decisions of prison administrators. [Citations.]" *Beahringer*, 204 Ill. 2d at 375-76.

¶ 16 We have acknowledged the applicability of the exhaustion doctrine to prisoner grievances as well. See *Johnson v. Illinois Department of Corrections*, 368 Ill. App. 3d 147, 150, 857 N.E.2d 282, 285 (2006) (stating the doctrine of exhaustion of administrative remedies applies to inmate grievances, including those alleging constitutional violations); *Ford v. Walker*,

377 Ill. App. 3d 1120, 1124, 888 N.E.2d 123, 127 (2007) (stating the doctrine of exhaustion applies to grievances filed by inmates).

¶ 17 Here, Curry acknowledged his own failure to pursue his administrative remedies, contending instead it was inapplicable to him due to some provision in the UCC, a comprehensive set of laws governing all commercial transactions in the United States. The UCC applies only to transactions involving the sale of goods. Unfortunately for Curry, he could have obtained as much protection from the application of the doctrine with a claim of diplomatic immunity—they are equally inapplicable to the situation before us.

¶ 18 Having admitted his failure to pursue his administrative remedies, it is clear no set of facts can be proved that would entitle Curry to recover. See *Henderson Square*, 2015 IL 118139, ¶ 61. Therefore, defendant's section 2-615 motion was properly granted. *People v. McVeay*, 2021 IL App (2d) 190292, ¶ 17 (stating failure to exhaust administrative remedies is a basis for dismissal under section 2-615).

¶ 19 We need not and should not address Curry's constitutional issue since our resolution of the exhaustion of administrative remedies question is dispositive. "[A] court will consider a constitutional question only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds." (Internal quotation marks omitted.) *People v. White*, 2011 IL 109689, ¶ 144, 956 N.E.2d 379.

¶ 20                                III. CONCLUSION

¶ 21 For the reasons set forth above, we affirm the trial court's dismissal of Curry's complaint pursuant to defendants' section 2-615 motion to dismiss.

¶ 22 Affirmed.

¶ 23                                *Postscript*

¶ 24    We note the extensive level of access provided to litigants in our legal system is an important cornerstone of our judicial system. However, judicial resources constitute a valuable and finite commodity. In our legal system, litigants bear a responsibility to refrain from attempting to expend these valuable resources on baseless or frivolous claims. While claims regarding the COVID-19 pandemic and its impact on incarcerated individuals can be legitimate, such a claim does not justify plaintiff seeking relief by relying on law which is clearly inapplicable to his claim. Moreover, defendant's admitted disregard of the most basic procedural requirements demonstrates a complete disregard of established law, which we decline to ignore.

¶ 25    We would note for plaintiff's edification the potential consequences for frequently filing baseless or frivolous claims. Under section 22-105 of the Code of Civil Procedure (735 ILCS 5/22-105 (West 2020)), prisoners can be sanctioned with fees taken from their inmate accounts for frivolous claims and under section 3-6-3(d) of the Unified Code of Corrections (730 ILCS 5/3-6-3(d) (West 2020)), prisoners can be deprived of good time credit for the filing of a frivolous lawsuit against the State, Department of Corrections, or Prisoner Review Board or any of their officers or employees.